IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JAVIER DIEGO URIBE,

       Plaintiff,            No. 2:10-cv-02615-DAD P

   vs.

S. TAYLOR, et al.,

       Defendants.      <u>ORDER</u>

_____/

       Plaintiff is a state prisoner proceeding pro se and seeking relief pursuant to 42 U.S.C. § 1983.   On October 4, 2010, plaintiff consented to Magistrate Judge jurisdiction in this action pursuant to 28 U.S.C. § 636(c).  <u>See</u> Doc. No. 4.  Before the court is plaintiff's amended complaint.[1]

I.  Screening Requirement

       The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity.  <u>See</u> 28 U.S.C. § 1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised

---

[1]  On May 2, 2011, the court dismissed plaintiff's original complaint and granted him leave to file an amended complaint in light of his request to supplement his complaint.  In that order the court also advised plaintiff of the legal standards governing a retaliation claim and pointed out other deficiencies in his original complaint.  (Doc. No. 6.)

1  claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be

2  granted, or that seek monetary relief from a defendant who is immune from such relief.  See 28

3  U.S.C. § 1915A(b)(1) & (2).

4          A claim is legally frivolous when it lacks an arguable basis either in law or in fact.

5  Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28

6  (9th Cir. 1984).  The court may, therefore, dismiss a claim as frivolous where it is based on an

7  indisputably meritless legal theory or where the factual contentions are clearly baseless.  Neitzke,

8  490 U.S. at 327.  The critical inquiry is whether a constitutional claim, however inartfully

9  pleaded, has an arguable legal and factual basis.  See Jackson v. Arizona, 885 F.2d 639, 640 (9th

10  Cir. 1989); Franklin, 745 F.2d at 1227.

11          Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and

12  plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the

13  defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atlantic

14  Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47

15  (1957)).  However, in order to survive dismissal for failure to state a claim a complaint must

16  contain more than "a formulaic recitation of the elements of a cause of action;" it must contain

17  factual allegations sufficient "to raise a right to relief above the speculative level."  Bell Atlantic,

18  550 U.S. at 555.  In reviewing a complaint under this standard, the court must accept as true the

19  allegations of the complaint.  See Hospital Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740

20  (1976).  The court must also construe the pleading in the light most favorable to the plaintiff and

21  resolve all doubts in the plaintiff's favor.  See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

22  II.  Plaintiff's Amended Complaint

23          In his amended complaint, plaintiff alleges as follows.  On March 11, 2009,

24  plaintiff was charged with a rules violation for stalking floor staff (log number B03-09-043).

25  The report was issued by defendant correctional officer S. Taylor and provides as follows:

26  /////

On 03/11/08 at approximately 1705 hours, while performing my duties as Building 8 E-Bed Officer, during the unit chow release, inmate URIBE . . . followed me into the building 8 office where I was preparing cell search logs, and gave me a typewritten letter apologizing for stalking me. [I]nmate URIBE didn't stop at the office door and talk to me from there, he came right behind me and startled me. On 01/08/09 I told inmate URIBE to stop showing me personal photos or attempting to give me letters and love poems that he cut out of magazines. On 02/26/09 I told Officer Pena of URIBE'S stalking behavior and asked Officer Pena to tell inmate URIBE in Spanish (because he is a Spanish speaker), to leave me alone, that his behavior was inappropriate and unwanted. Officer Pena counseled URIBE in Spanish to cease his harassment of me. I also warned inmate URIBE on 02/26/09, "If you don't back off of me, I will write a 115 RVR on you for stalking me." After all these warnings inmate URIBE continues his obsessive, compulsive stalking of me and after today, when he waited until chow release when Officer Pena was covering chow and Officer Knoll was searching a cell, in order to approach me in the confined space of the office, it seems the only solution is to remove inmate URIBE from his job assignment[2] and unit to another yard. A copy of his letter is attached. Inmate URIBE is aware of this report. Inmate URIBE is not a participant in the Mental Health Services Delivery System.

(Doc. No. 12 at 32.) Defendant Palomares was assigned as plaintiff's investigative employee with respect to the disciplinary charge and defendant Ward was the hearing officer. On March 30, 2009, plaintiff was found guilty of the prison disciplinary charge of stalking floor officer and was assessed sixty-days loss of behavioral credits and placed in privilege group C for sixty-days. (Id. at 48-49.)

On March 11, 2009, plaintiff was provided a notice for administrative segregation placement. (Id. at 35.) The notice, signed by defendant S. Smith, informed plaintiff that the placement was due to the incident with officer Taylor which was deemed to be a threat to the safety and security of the prison. (Id.) Plaintiff refused to sign the notice. (Id.) On March 19, 2009, plaintiff appeared before the ICC for an initial administrative placement review. (Id. at 4 & 40.) The ICC determined that plaintiff could be released from administrative segregation and

---

[2]  Plaintiff was working as a porter. See Doc. No 14 at 33.

1 | plaintiff was assigned "C" facility.  (Id. at 40.)

2 |    On March 12, 2009, plaintiff was issued a second rules violation for "refusing to

3 | accept assigned housing" with another inmate while in administrative segregation (log number

4 | C03/09-059).  (Id. at 37.)  While in administrative segregation, plaintiff contends that some of his

5 | personal property was lost.  (Id. ¶ 51 at 23.)  Plaintiff asserts that defendant correctional officer

6 | Koll was responsible for securing his property.  (Id.)

7 |    Plaintiff also alleges that since he filed this civil rights on September 28, 2010[3], he

8 | has been subject to multiple acts of retaliation.  (Id. at 24.)  Those acts of retaliation included the

9 | following:  The administration's refusal to assign plaintiff to housing in B-yard, although that is

10 | where defendant Taylor worked.  (Id.)  While in administrative segregation, plaintiff was moved

11 | several times.  (Id. at 25.)  There were delays in releasing and returning plaintiff to his cell.  (Id.

12 | at 26.)  Defendant Taylor has been assigned to work in the same building where plaintiff is

13 | housed which plaintiff believes has been done to cause him "deep emotional and psychological

14 | pain[.]"  (Id. at 27.)

15 |    Plaintiff claims his right to due process was violated, that he was subjected to

16 | cruel and unusual punishment, and that he has suffered retaliation.  (Doc. No. 12 at 9.)  Plaintiff

17 | seeks $12,000 as monetary damages and the removal of the two rules violation reports from the

18 | central file.  (Id. at 29.)

19 |    For the reasons set forth below, the court finds that plaintiff has once again failed

20 | to state a cognizable claim.

21 | III.  Due Process Claims

22 |    Plaintiff claims that his due process rights were violated in several respect in

23 | connection with the prison disciplinary charge brought against him for stalking.  Specifically, he

24 | contends that his due process rights were violated because:  (1) the rules violation report was

25 |

26 |   [3] Plaintiff's civil rights complaint was actually filed with this court on September 27, 2010.  (Doc. No. 1.)

1   invalid; (2) there is no applicable regulation prohibiting stalking; (3) the investigative employee

2   assigned to him performed inadequately; (4) the defendants' failed to counsel him prior to

3   issuing the rules violation report, (5) his disciplinary hearing was inadequate, and (6) his

4   placement in administrative segregation was invalid.  The court will consider each aspect of

5   plaintiff's due process claim below.

6       A.   Validity of the Stalking Charge and the Disciplinary Hearing (Claims I and VIII[4])

7         Plaintiff challenges the validity of the prison disciplinary charge brought against

8   him for stalking by attacking defendant Taylor's credibility.  In this regard, plaintiff argues that

9   defendant Taylor made inconsistent statements when she alleged that plaintiff "followed" her

10  into the office and that she was "startled" by plaintiff.  (Id. at 10.)  He also questions defendant

11  Taylor's credibility by arguing that she is trained to be "visual[ly] aware of inmates" in the

12  building and that if defendant was truly startled by plaintiff, she should have pushed the alarm

13  button which she did not do.  (Id. at 11.)  Finally, plaintiff argues that defendant Taylor's

14  reference to the apology letter plaintiff purportedly wrote is suspect because the letter was not

15  mentioned in her initial statement and the letter has never been formally "disclosed" or shown to

16  plaintiff.  (Id. at 12-13.)

17        Regarding the disciplinary hearing held on the charge, plaintiff claims that hearing

18  officer defendant Ward failed to ensure that plaintiff was afforded due process protections.  (Id.

19  at 20.)  Plaintiff contends that defendant Ward "'twisted'" the proceedings so that it was

20  favorable for defendant Taylor by allowing the use of false evidence and false statements.  (Id.)

21  Plaintiff again points to defendant Taylor's allegedly conflicting statements and questionable

22  credibility.  (Id.)  Defendant Ward had sergeant Hernandez act as a Spanish-language interpreter

23  during the hearing but plaintiff contends that it was Mr. Rodriquez who acted as the interpreter,

24  that his Spanish-language skill was "poor" and that plaintiff did not understand the interpreter.

25   

26  [4]  Plaintiff has presented each of his claims as an "Argument" beginning on page 10 of his
amended complaint.

1   (Id.)  Plaintiff contends that defendant Ward wrote in the hearing decision that plaintiff

2   understood the hearing process but that this was not true.  (Id.)  Plaintiff argues that defendants

3   Taylor, Pena and Koll were not present at the hearing, that due process "mandates that witnesses

4   appear[,]" and that their testimony was vital to plaintiff's efforts to prove his innocence.  (Id. at

5   21.)  Finally, plaintiff argues that he was found guilty based on insubstantial evidence.  (Id.)

6          These due process claims are barred by the holding in Edwards v. Balisok, 520

7   U.S. 641 (1997).  In that case, the Supreme Court held that where a plaintiff challenges alleged

8   procedural defects in a disciplinary hearing and if established, those defects would necessarily

9   imply the invalidity of the deprivation of his good-time credits, the claim is not cognizable under

10  § 1983.  Id. at 648.  Here, plaintiff seeks monetary damages and the expungement of the rules

11  violation report pertaining to the prison disciplinary charge of stalking.  In order for the court to

12  grant plaintiff such relief, the court would have to find that the disciplinary proceedings were

13  constitutionally defective which, in turn,  would necessarily invalidate plaintiff's disciplinary

14  conviction.  Therefore, plaintiff may not proceed with these due process claims until the

15  disciplinary conviction for stalking has been reversed, expunged or declared invalid.  Since

16  plaintiff has already informed the court that his state habeas challenges to his disciplinary

17  conviction for stalking have been unsuccessful, his due process claims challenging the validity of

18  that charge and disciplinary hearing held thereon are barred under Balisok.  (Doc. No. 12 at 5.)

19          B.  Absence of Regulation Prohibiting Stalking (Claim II)

20          Plaintiff asserts that he has searched the California regulations and has found no

21  regulation that mentions stalking or authorizes the issuance of a prison rules violation for

22  stalking.  (Id. at 13-14.)  Plaintiff argues that it violates the Fifth and Fourteenth Amendments to

23  punish him for an act that is not prohibited.  (Id. at 14.)

24  /////

25  /////

26  /////

6

In response to plaintiff's inmate appeal[5] concerning the disciplinary charge for stalking, he was informed that the applicable regulation upon which the stalking charge was based was 15 California Code of Regulations (CCR) § 3005.  That regulation prohibits "behavior which might lead to violence or disorder, or otherwise endangers facility, outside community or another person."  CCR § 3005(a).  Stalking clearly falls within this regulation and the court does not find the regulation itself to be unconstitutionally vague.  See Melugin v. Hames, 38 F.3d 1478, 1486 (9th Cir. 1994) ("[A] statute is deemed void for vagueness if it fails to give adequate notice to people of ordinary intelligence of the prohibited conduct.")[6]

C.  Failure to Counsel Plaintiff or Issue a Counseling Chrono (Claims III, IV, V, IX)

In these claims, plaintiff argues that if defendants Taylor, Pena and Koll believed that he was engaging in inappropriate behavior towards defendant Taylor, they should have counseled plaintiff about his behavior and documented that action with a counseling chrono (CDC-128).  Such allegations fail to state a cognizable due process claim.  Plaintiff has cited no authority, and the court has located none, that due process requires that a prisoner be counseled or receive a counseling chrono before a rules violation report is issued.

D.  Staff Assistance and Investigative Employee  (Claim VI)

Plaintiff contends that he received inadequate assistance from defendant Palomares, the investigative employee assigned to plaintiff in connection with the prison disciplinary charge for stalking.  Plaintiff alleges that defendant Palomares failed to ensure that plaintiff had the assistance of a Spanish-language interpreter and staff assistant, and also failed to

---

[5]  See Second level appeal response (Doc. No. 12 at 73) and director's level decision (Id. at 76).

[6]  Moreover, to the extent that plaintiff is challenging the interpretation or application of a California regulation, he has failed to state a cognizable federal claim.  See Carr v. Cate, No. 1:08-cv-01931-LJO-GBC (PC), 2012 WL 569034 at *4 (E.D. Cal. Feb. 21, 2012) ("[T]o the extent Plaintiff alleges that he is solely challenging the constitutionality of 'over familiarity' [as an underground regulation] and not any constitutional deprivation, such a claim would not be cognizable under § 1983.").

interview defendant Koll on plaintiff's behalf.[7] (Id. at 18.) Plaintiff does not set forth any further

factual allegations explaining how these alleged failures were harmful to him despite the court's

earlier order advising plaintiff that further clarification was needed with respect to this claim.[8]

"Prison disciplinary proceedings are not part of a criminal prosecution, and the

full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell,

418 U.S. 539, 556 (1974). The Supreme Court has held that at a prison disciplinary hearing, the

prisoner must receive: "(1) advance written notice of the disciplinary charges; (2) an

opportunity, when consistent with institutional safety and correctional goals, to call witnesses

and present documentary evidence in his defense; and (3) a written statement by the factfinder of

the evidence relied on and the reasons for the disciplinary action ." Superintendent v. Hill, 472

U.S. 445, 454 (1985). In addition, procedural due process requires that the findings of the prison

disciplinary board be supported by some evidence in the record. Id.

Here, plaintiff has not claimed a violation of any of the procedural protections

required under these Supreme Court authorities. Moreover, plaintiff has no due process rights to

the assistance of an investigative employee and thus, his claim that defendant Palomares failed to

conduct an adequate investigation or to obtain a staff assistant for plaintiff in connection with the

disciplinary charge fails to state a cognizable due process claim.

As to plaintiff's contention that defendant Palomares should have obtained an

interpreter for him, in his amended complaint plaintiff does not allege facts explaining what

---

[7] Plaintiff alleges that defendant Koll told defendants Taylor and Pena that plaintiff "had a crush on Taylor[.]" (Doc. No. 12 at 23.) Plaintiff also alleges that defendant Koll failed to secure plaintiff's property when plaintiff was moved to administrative segregation. (Id.) However, the court notes that at plaintiff's disciplinary hearing his question to defendant Koll was found to be "irrelevant to the incident as it does not prove innocence or guilty, nor does it provide additional information." (Id. at 42.)

[8] In the court's May 2, 2011 order, plaintiff was advised that in any amended complaint he elected to file he needed to clarify whether he requested an interpreter in connection with his disciplinary hearing and how he was allegedly harmed by not having an interpreter. See Doc. No. 6 at 4.

information was lost or unavailable to him due to any claimed language barrier.  There is no

indication or suggestion in the allegations of plaintiff's amended complaint that he requested an

interpreter during the investigation and/or at the disciplinary hearing.  Rather, it appears that the

hearing officer noted that plaintiff spoke English.  Nonetheless, the hearing officer obtained an

interpreter to explain the hearing process and charges, and when asked if he understood, plaintiff

"in his own words, articulated his full understanding of the hearing proceedings and the charges

against him to the SHO'S satisfaction."  (Id. at 46.)  In this context, any alleged failure to obtain

an interpreter does not state a cognizable due process claim.  See Gonzales-Perez v. Harper, 241

F.3d 633, 637-38 (8th Cir. 2001) (concluding that there is no due process violation when the

prisoner-plaintiff did not request an interpreter, the prisoner had appeared at other disciplinary

hearings without an interpreter, and the hearing officer believed the prisoner's language skills

were sufficient to understand and respond to the disciplinary proceedings); Oliver v. Vasbinder,

No. 08-11768-BC, 2010 WL 779178, at *4 (E.D. Mich. Mar. 4, 2010) ("Plaintiff's failure to

show that the need for an interpreter at the hearing defeats the claim that his Fourteenth

Amendment due process rights were violated.").

E.  Administrative Segregation  (Claim VII)

Plaintiff claims that defendant Smith violated his due process rights when he

"enhanced the indictment against Uribe" which resulted in plaintiff's placement in administrative

segregation.  (Doc. No. 12 at 19.)  Although plaintiff was issued a rules violation report for

stalking, defendant Smith charged plaintiff with "'over familure [sic] statements[.]'"  (Id.)

Plaintiff argues that defendant had a duty "to stay [the] course of the initial charge" and to

provide plaintiff with a Spanish-speaking staff member.[9]  (Id.)  Plaintiff contends that by using

the "over familure [sic] " charge, "the charge look[ed] more dubious in the eyes of other prison

---

[9]  Plaintiff's claim of entitlement to a staff assistant has been discussed above.  The court notes that plaintiff does not allege that he required a Spanish-language interpreter to understand the reason for his placement in administrative segregation.

1    officials handling the case against Uribe." (Id. at 19-20.)

2            In determining whether a prisoner should be placed in administrative segregation,

3    due process requires:  "Prison officials must hold an informal nonadversary hearing within a

4    reasonable time after the prisoner is segregated.  The prison officials must inform the prisoner of

5    the charges against the prisoner or their reasons for considering segregation.  Prison officials

6    must allow the prisoner to present his views."  Toussaint v. McCarthy, 801 F.2d 1080, 1100 (9th

7    Cir. 1987).  Here, the allegations of plaintiff's own amended complaint reflect that he received

8    the required notice and understood that his placement in administrative segregation was in

9    response to the stalking allegation.  Therefore, plaintiff has failed to state a cognizable due

10   process claim concerning his placement in administrative segregation.

11   IV.  Loss of Property (Claim IX)

12           Plaintiff claims that when he was placed in administrative segregation, defendant

13   Koll seized his property.  Plaintiff believes that defendant failed to properly inventory the

14   property and compare the property seized with the property noted on his inmate property card.

15   (Doc. No. 12 at 12.)  Plaintiff alleges that at some unknown time some of his property, valued at

16   $125.58, was lost.  (Id.)

17           The United States Supreme Court has held that "an unauthorized intentional

18   deprivation of property by a state employee does not constitute a violation of the procedural

19   requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful

20   postdeprivation remedy for the loss is available."  Hudson v. Palmer, 468 U.S. 517, 533 (1984).

21   The same applies for a negligent deprivation of property.  Barnett v. Centoni, 31 F.3d 813, 816

22   (9th Cir. 1994) (per curiam) ("[A] negligent or intentional deprivation of a prisoner's property

23   fails to state a claim under section 1983 if the state has an adequate post deprivation remedy.").

24   The California Tort Claims Act, Cal. Gov't Code § 810 et seq., provides an adequate post-

25   deprivation remedy for loss of property.  Id. at 816-17.

26   /////

1    Here, plaintiff's allegations against defendant Koll state a claim only of a

2  negligent or unauthorized intentional deprivation of property.  Because plaintiff has a meaningful

3  postdeprivation remedy, his deprivation of property claim fails to state a cognizable claim under

4  § 1983 .

5  V.  Retaliation Claim (Claim X)

6    In the court's May 2, 2011 order dismissing the original complaint and granting

7  leave to amend, the court provided plaintiff with the legal standards governing a First

8  Amendment retaliation claim.  Therein, plaintiff was advised that such a claim involves five

9  elements: "(1) An assertion that a state actor took some adverse action against an inmate (2)

10  because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's

11  exercise of his First Amendment rights, and (5) the action did not reasonably advance a

12  legitimate correctional goal ." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir.2005).

13    In his amended complaint, plaintiff alleges that after he file this civil rights action,

14  he was subjected to multiple cell moves by prison officials.  It appears from plaintiff's allegations

15  that these cell moves were made so that plaintiff was in a different yard than defendant Taylor,

16  who had issued the rules violation report for stalking.  The allegations of the amended complaint

17  do not indicates a retaliatory motive and plaintiff has failed to allege facts suggesting that his cell

18  moves did not reasonably advance a legitimate correctional goal.[10]  Moving plaintiff to areas that

19  would decrease his contact and interaction with defendant Taylor following the disciplinary

20  charge and conviction for stalking, would appear to forward a legitimate correctional goal.  The

21  other allegations of the amended complaint regarding the delays in opening plaintiff's cell door

22  so he could exit or re-enter his cell and the stress he experiences when in proximity to defendant

23  Taylor fails to support any inference that plaintiff has experienced adverse action as a result of

24  

25    [10]  Plaintiff is also advised that prison inmates do not have a constitutional right to be
incarcerated at a particular correctional facility or to be transferred from one facility to another.

26  See Meachum v. Fano, 427 U.S. 215, 224-25 (1976).  Similarly, prisoners do not have a
constitutional right to be housed in a particular building, yard or cell.

1 retaliation.  Therefore, the court finds that plaintiff has failed to state a cognizable retaliation

2 claim.

3 VI.  Eighth Amendment Claim (Claim XII)

4            In this claim, plaintiff maintains that he did not stalk defendant Taylor and that the

5 "prison procedures [sic] and disciplinary actions taken against him has forced him to endure

6 months and now years of mental, emotional and physical fatigue" in violation of his right to free

7 from cruel and unusual punishment.  (Doc. No. 12 at 29.)

8            "Not every governmental action affecting the interests or well-being of a prisoner

9 is subject to Eighth Amendment scrutiny, however."  Whitley v. Albers, 475 U.S. 312, 319

10 (1986).  It is "unnecessary and wanton infliction of pain" that constitutes cruel and unusual

11 punishment forbidden by the Eighth Amendment.  Id.  See also Ingraham v. Wright, 430 U.S.

12 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976).  Certainly, the issuance of rules

13 violations reports and the conducting of prison disciplinary proceedings do not constitute cruel

14 and unusual punishment.  See Jones v. Prater, No. 2:10-cv-01381 JAM KJN P, 2012 WL

15 1979225 at *2 (E.D. Ca. June 1, 2012) ("[P]laintiff cannot state a cognizable Eighth Amendment

16 violation based on an allegation that defendants issued a false rules violation against plaintiff.");

17 Sweet v. Kneri, No. CIV S-11-2625 EFB P, 2012 WL 1604711 at *2 (E.D. Cal. May 7, 2012)

18 ("[T]he mere allegations that plaintiff is mentally ill and was found guilty of a rules violation, are

19 not sufficiently serious to demonstrate cruel and unusual punishment."); Lopez v. Celaya, No. C

20 06-5071 THE (PR), 2008 WL 205256 at *5 (N.D. Cal. Jan. 23, 2008) ("A prisoner has no

21 constitutionally guaranteed immunity from being wrongly or falsely accused of conduct which

22 may result in the deprivation of a protected liberty interest.").  Thus, in his amended complaint

23 plaintiff has also failed to state a cognizable Eighth Amendment claim.

24 VII.  Further Leave to Amend

25            The court has carefully considered whether plaintiff should be provided leave to

26 amend his complaint.  "Valid reasons for denying leave to amend include undue delay, bad faith,

1  prejudice, and futility." <u>California Architectural Bldg. Prod. v. Franciscan Ceramics,</u> 818 F.2d

2  1466, 1472 (9th Cir.1988).  <u>See also</u> <u>Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau</u>,

3  701 F.2d 1276, 1293 (9th Cir.1983) (holding that, while leave to amend shall be freely given, the

4  court need not allow futile amendments).  The court finds that further leave to amend would be

5  futile in this case.  Plaintiff's allegations fail to state a cognizable civil rights claim.  Moreover,

6  plaintiff was provided with applicable legal standards, was granted leave to amend and has failed

7  to correct the deficiencies noted in the court's order dismissing his original complaint.

8  Therefore, the court will not grant plaintiff further leave to amend and will instead dismiss the

9  amended complaint with prejudice.

10                                          CONCLUSION

11          For all the reasons set forth above, the court finds that plaintiff's amended

12  complaint filed June 28, 2011, fails to state a cognizable claim.  Accordingly, IT IS HEREBY

13  ORDERED that this action be dismissed with prejudice for failure to state a cognizable claim.

14  DATED: October 12, 2012.

15

16

17  DAD:4                                   DALE A. DROZD
    urib2615.fsc2                           UNITED STATES MAGISTRATE JUDGE

18

19

20

21

22

23

24

25

26

13